Terrance Westmoreland

        -Plaintiff

                   Case No:

   vs.

                   Violations of 42 U.S.C. §1981 and pendant state claims for Defamation, Battery and under Wis. Stats. 427.104 § (1)(h)

Home Depot, Inc.    and
ABC Security Company (a real but substituted entity)

        -Defendant(s)

---

## Complaint

NOW COMES the Plaintiff Terrance Westmoreland with causes of action against the Home Depot, Inc. and ABC Security Company (a real but substituted entity). under 42 U.S.C. §1981 and pendant state law claims for Defamation and under Wis. Stats. 427.104 §(1)(h), Battery and Vicarious Liability to Home Depot based on the Non-Delegable Duty Doctrine and sets out as follows.

### <u>INTRODUCTION</u>

"White Americans are largely unaware of their privileged status in the marketplace. Most of the time, white consumers can run errands, shop, dine out, and take in a show with the expectation of at least minimally appropriate service

in the establishments where they spend their money. However, African American consumers' patronage and money are somehow regarded as less valuable than that of the white consumer. In fact, "shopping while black" involves some of the same risks associated with the better-known phenomenon of "driving while black."

Shoppers of color are viewed with suspicion and, as a result, they are more likely to be watched, followed, harassed, and even denied service in the course of their daily roles as consumers. The issue of racial profiling in retail stores gained national attention during the 1990s following two ABC television broadcasts ("True Colors", on Prime Time Live and an ABC News 20/20 investigative report).

Consumer Racial Profiling (CRP) is defined as any type of differential treatment of consumers in the marketplace based on race or ethnicity that constitutes a denial or degradation in the product or service offered to the consumer. In a retail environment, CRP can take many forms, ranging from overt or outright confrontation to very subtle differences in treatment, often manifested in forms of harassment. Outright confrontation includes verbal attacks, such as shouting racial epithets, and physical attacks, such as removing customers from the store. Customer harassment includes slow or rude service, required pre-payment, surveillance, searches of belongings, and neglect, such as

Case 2:20-cv-01130-BHL    Filed 07/24/20    Page 2 of 13    Document 1

refusing to serve African-American customers." *Shopping While Black: Applying 42 U.S.C. 1981 to Cases of Consumer Racial Profiling* <u>Boston College Third World Law Journal</u> Vol. 23, Issue 1, Art.2.

"With African Americans spending $1.2 trillion annually, brands have a lot to lose. Mainstream manufacturers across other industries are also seizing the opportunity to create specific products that appeal to diverse consumers. Not so surprisingly, African Americans have cornered the ethnic hair and beauty market, ringing up $54 million of the $63 million total industry spend in 2017. But marketers should find it interesting that Black consumers aren't just spending on products created specifically to appeal to them. In fact, in terms of sheer dollars, African Americans spent considerably more money in the general beauty marketplace last year. Black shoppers spent $473 million in total hair care (a $4.2 billion industry) and made other significant investments in personal appearance products, such as grooming aids ($127 million out of $889 million) and skin care preparations ($465 million out of $3 billion).

African Americans make up 14% of the U.S. population but have outsized influence over spending on essential items such as personal soap and bath needs ($573 million), feminine hygiene products ($54 million) and men's toiletries ($61 million). Nielsen research also shows Black consumers spent $810 million on bottled water (15% of overall spending) and $587 million on refrigerated drinks

(17% of overall spending). Luxury, non-essential products such as women's fragrances ($151 million of a $679 million industry total), watches and timepieces ($60 million of $385 million in overall spending) and even children's cologne ($4 million out of $27 million) also play well to an audience that's keen on image and self care." *Nielsen Homescan*, Dec. 30, 2017.

"A meta-analysis of data collected at the encounter or suspect level reported that blacks had an increased likelihood of being arrested as compared to whites even after controlling for factors such as demeanor, offense severity, quantity of evidence at the scene, prior record of the suspect, and requests to arrest by victims." *Understanding Racial and Ethnic Disparities in Arrest: The Role of Individual, Home, School, and Community Characteristics* Nov. 3, 2016.

"Far from confining 1981's guarantee to discrete moments, the language of the statute covers the entirety of the contracting process. The statute defines "make and enforce contracts" to include the making, performance, modification and termination of contracts and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship 1981(b)

"In 1991, with the design to supersede *Patterson* Congress enacted the expansive definition of "make and enforce contracts" now contained in 1981(b). *CBOCS West Inc. v. Humphries,* 553 U.S. 442, 150 (2008). Post formation racial harassment violates 1981, the amendment clarifies, because the right to "make and enforce" a contract includes the manner in which the contract is carried out."

*Comcast Corp. v. National Association of African American-Owned Media et al.* 589 U.S. ____ p. 2-3 *(3/23/2020* slip opinion, Justice Ginsburg concurrence).

## PARTIES

1. That **Terrance Westmoreland** is a real person, by race an African American male, domiciled in Milwaukee WI.

2. That **ABC Security Company** ("ABC Security") is a real but unidentified entity whose agent for service of process is unknown and which maintains a principal place of business and headquarters at an unknown.

3. That ABC Security is a private detective and security agency providing retail theft prevention services to Menards, a hardware and home improvement retailer and is an agent of its principal Home Depot, Inc.

4. That **ABC Security Agent #1** ("Agent #1") is unknown, but unidentified individual person who is an employee, actor and/or agent who at all times was in the scope of his agency/employment at all times material hereto authorized to be at the Home Depot, Inc.'s store at issue working solely for the benefit of Home Depot, Inc.

5. That **Home Depot, Inc.** is a domestic business entity with a principal office located at 1209 Orange Street Wilmington, DE 19801 with no known agent for service of process within the State of Wisconsin.

## BACKGROUND

6. On July 24, 2019 the Plaintiff had already purchased and fully paid for window blinds from Home Depot located at 4100 N. 124th St. Wauwatosa, WI 53222 at 10:43 a.m. on 07/24/2019.

7. That later that same day the Plaintiff decided to exercise the Home Depot's return or exchange policy and brought back the window blinds to exchange for a different color, since the blinds had the wrong color scheme for the room they were intended for.

8. That Plaintiff then returned to the Home Depot, selected the exchange for his window blinds which he had just previously purchased and went to the customer service area.

5

9. When the Plaintiff arrived at the customer service where he announced to the cashier that he needed to return the previously purchased window blinds to exchange for the replacement blinds which he had just picked out.

10. That there and there an ABC Security agent - Agent #1 working on behalf of Home Depot approached the Plaintiff and the Home Depot cashier and accused the Plaintiff of attempting to defraud Home Depot.

11. That Agent #1 was white, and the Plaintiff is African American.

12. That the Home Depot cashier attempted to explain to the Agent #1 that the Plaintiff was merely exchanging the window blinds which he had previously purchased.

13. That Agent #1 interrupted the cashier's explanation that the Plaintiff was making a lawful exchange of consumer goods pursuant to Home Depot's exchange policy for a consumer transaction completed by Home Depot with the Plaintiff earlier that same day.

14. That Agent #1 refused to listen to the Home Depot cashier's explanation that the Plaintiff was merely exchanging the window blinds which he had previously purchased.

15. Then the Agent #1 physically grabbed and detained the Plaintiff within the confines of the Home Depot where the Plaintiff was not free to leave.

16. The Plaintiff insisted that the Agent #1 review the security camera footage, however Agent #1 refused.

17. Then the Wauwatosa Police were called to investigate but found no wrongdoing on the part of the Plaintiff and he was released by the Police from the custody of Home Depot and Agent #1.

18. That at no time on July 24, 2019 was the Plaintiff allowed to exchange merchandise under the Home Depot merchandise return policy and was therefore denied equal consumer service or service of a lower quality than other white citizens who were legitimately shopping that day.

6

19. That at all times material hereto Agent #1 was an agent of ABC Security Company and Home Depot and was acting in part or in whole for the benefit of Home Depot.

20. That after the events herein was concluded Defendants gained knowledge of its Agent #1's conduct towards Plaintiff and ratified its agents conduct by issuing the Plaintiff a notice banning him from Home Depot stores.

**COUNT 1**
**42 U.S.C. § 1981**
**Racial Discrimination by Commercial Establishment**
**vs. All Defendants**

21. That Plaintiff adopts and re alleges Counts 1-20 as though fully set out herein.

22. That Mr. Westmoreland is an African American and therefore a member of a protected class.

23. That Mr. Westmoreland made himself available to receive and pay for goods and services ordinarily provided by Home Depot to all members of the public in the manner in which they are ordinarily provided.

24. That Plaintiff did not enjoy all of the privileges and benefits of the contracted for purchase of consumer goods and services from Home Depot, due to actions or inactions taken through its Agent #1 on behalf of Home Depot and under factual circumstances which rationally support an inference of unlawful discrimination based on race in that:

    a. Plaintiff was deprived of goods and services while similarly situated persons outside the protected class were not deprived of those services; and/or

    b. Plaintiff received goods and services in a markedly hostile manner which a reasonable person would find objectively unreasonable.

    c. That the conduct engaged in by Agent #1 on behalf of Home Depot was so profoundly contrary to the manifest financial interests of Home Depot and their employees.

7

d. That Home Depot's actions were far outside of widely accepted business norms; and

e. That Home Depot's actions were so arbitrary on their face, that the conduct supports a rational inference of discrimination.

25. That the actions or inactions of Home Depot were made with reckless indifference, or intentionally, or recklessly as to the federally protected rights of the Plaintiff.

26. The business of providing retail loss prevention is an inherently dangerous one which often entails a breach of the peace and one where the law does, or should recognize that Home Depot is vicariously liable for either it's Agent #1's acts or that of the Acts of ABC by virtue of the *non-delegable duty doctrine*.

27. That as a result of the Defendants actions and/or inactions the Plaintiff was harmed.

**<u>COUNT 2</u>**
**(Pendant State Claim)**
**Defamation vs.**
**All Defendants**

28. That Plaintiff readopts and re alleges Counts 1-27 as though fully set out herein.

29. That Home Depot, by its Agent #1 made a false statement, or a set of false statements, actually or by inuendo, with express malice and/or reckless disregard for the truth, namely that Plaintiff was a thief and published these falsehoods to others without having Plaintiff's consent or other privilege to do so.

a. That Home Depot's Agent #1 knew or recklessly disregarded the truth that Mr. Parker had fully completed payment for the purchase of a fan on-line.

b. That Home Depot's held all of its agents, including Agent #1, out as being retail loss prevention professionals who were given adequate

8

training by Home Depot and in theory enough training to discern that most or all people who have receipts and are seeking to exchange merchandise are entitled to do so under Home Depot merchandise return policy.

c. That furthermore Agent #1 recklessly disregarded the truth when he disregarded the Home Depot cashier's explanation, which proved to be true, and instead told the cashier and others in the vicinity that the Plaintiff was attempting to defraud Home Depot.

30. That the false statements by Agent #1 regarding Plaintiff were communicated to others, by speech and/or by conduct.

31. That the false statements made by Agent #1 to others were not privileged, were defamatory, tended to harm Plaintiff's reputation so as to lower her in the estimation of the community and/or deterred third persons from associating or dealing with Plaintiff.

32. That Home Depot is vicariously liable for the acts of its Agent #1.

33. That as a result of Home Depot's actions vicariously by Agent #1 the Plaintiff was harmed.

## COUNT 3
**(Pendant State Claim)**
**Wis. Stats. 427.104(1)(h)**
**vs. Home Depot**

34. That Plaintiff readopts and re alleges Counts 1-33 as though fully set out herein.

35. That at all times material hereto the Plaintiff engaged in a consumer transaction, or other consumer transaction.

36. That Home Depot authorized its Agent #1 to collect upon a consumer debt, namely for the amount owing for window blinds which Plaintiff had fully paid for.

37. That Home Depot and Agent #1 were attempting to collect an alleged consumer debt on behalf of Home Depot for consumer good(s) which

9

Plaintiff allegedly owed for window blinds, which he had already paid for, but wanted to exchange.

38. That Home Depot, by its agent(s) violated the following parts of the Wisconsin Consumer Act:

   a. **§427.104(1)(h):** Engage in conduct which can reasonably be expected to threaten or harass the customer.

That Agent #1 interrupted a lawful exchange of merchandise under Home Depot's own return policy and declared that the Plaintiff was defrauding the store. The Wauwatosa Police confirmed that Plaintiff was indeed a customer and not a thief. That Home Depot engaged in conduct which can reasonably be expected to threaten or harass the customer.

39. Home Depot is vicariously liable for the acts of its Agent #1.

40. That as a result of the Defendants actions the Plaintiff was harmed.

## COUNT 4
### (Pendant State Claim)
### Battery vs. Home Depot and Agent #1

41. That Plaintiff readopts and re alleges Counts 1-40 as though fully set out herein.

42. That Home Depot's Agent #1 intentionally caused a harmful and/or offensive contact with Plaintiff without his consent causing him harm.

43. That Home Depot is vicariously liable to the plaintiff for the acts or omissions of its Agent #1.

44. That at no time did the Plaintiff consent to Home Depot Agent #1 to physically touch him.

10

45. Therefore, Home Depot Agent #1 caused a battery against the person of the Plaintiff who suffered harm as a result and for which Home Depot is vicariously liable, *inter alia*, under the *non-delegable duty doctrine* because store security is an inherently dangerous activity.

## COUNT 5
### (Pendant State Claim)
### Negligence vs. Home Depot

46. That Plaintiff readopts and re-alleges Counts 1-45 above of this Complaint as though fully set out herein.

47. That Home Depot owed a duty of care through Agent #1 to Mr. Parker to provide reasonable retail loss prevention services at the Menard's store at issue.

48. That Home Depot through its Agent #1 breached the duty of care owed to Plaintiff because Home Depot's agent failed to reasonably investigate a purported fraud incident and instead subjected Plaintiff to verbal intimidation and physical battery.

49. That Home Depot is vicariously liable for the acts of its Agent #1.

50. That the breach of the duty of care owed to Plaintiff by Home Depot's Agent #1 caused Plaintiff harm.

## COUNT 6
### (Pendant State Claim)
### Vicarious Liability-Non-Delegable Duty Doctrine
### as to all Counts Plead
### vs. Menard's

51. That Plaintiff readopts and re-alleges Counts 1-50 above of this Complaint as though fully set out herein.

52. That Home Depot is a business that routinely performs and specializes in private security and retail loss prevention, which is a "high risk" industry for confrontation which generate numerous lawsuits nationwide.

11

53. That the Defendant Home Depot selected Agent #1 with full knowledge of the high-risk nature of retail loss prevention and formed a contract with Home Depot in an attempt to shield itself contractually from liability which arises in the retail loss prevention field.

54. That the entire stream of benefits flows from Agent #1 to Home Depot in the form of theft reduction.

55. That the inherent high risk of retail loss prevention is due to the constant likelihood for a breach of the peace to occur during confrontation.

56. That a breach of the peace and the violations stemming therefrom as complained of herein, were foreseeable to Home Depot as a consequence of delegating its retail loss prevention activities to Agent #1.

57. `That Menard's is or should be held vicariously and/or strictly liable to the Plaintiff under the *non-delegable duty doctrine* for the inherently dangerous activity of retail loss prevention for the benefit of Menard's inside its store[1] for each separate individual count and sub count plead herein.

### **Prayers for Relief**

 **Wherefore,** Plaintiff demands judgment against Defendants, jointly and severally, for the harm set out above as follows:
Under 42 U.S.C. §1981:

a.  For general damages;
b.  For emotional and psychological harm;
c.  For attorney's fees under 42 U.S.C. 1988;
d.  Specifically, for special damages under Rule 9(g), in the form of punitive damages for Defamation and Battery;

Under State Common Law Defamation:

e.  For any general damages;
f.  For punitive damages statutory limit of $200,000.00;
g.  For emotional harm;

---

[1] *See Brooks v. Hayes* 133 Wis. 2d 228

Under State Common Law Battery:

h. For any general damages;
i. For punitive damages statutory limit of $200,000.00;
j. For emotional harm;

Under §427.104(1)(h):

k. For $1,000.00 in statutory damages;
l. For punitive damages under § 425.301(1), statutory limit of $200,000.00;
m. For reasonable attorney's fees under 425.308;

Under Negligence:

n. For all medical, psychological and dignitary harm proved;

**Demand:**    **$800,000.00**

Dated this __19th____ of _____July___ 2020
Attorneys for Plaintiff,

___/s/ *Paul A. Strouse*_____
Paul Strouse- *Attorney At Law*
SBN:   1017891
Thomas Napierala- *Attorney at Law*
SBN:   1011811

The Law Offices of Paul Strouse
413 North 2nd Street Suite #150
Milwaukee WI 53203
9414) 352-0820